☐ Check if this is an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | **Carestream Health World Holdings, LLC** |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** | **N/A** |
| | Include any assumed names, trade names, and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 3  2  –  0  4  1  1  6  6  2 |

4. **Debtor's address**

| **Principal place of business** | **Mailing address, if different from principal place of business** |
|---|---|
| **150 Verona Street** | |
| Number       Street | Number       Street |
| | P.O. Box |
| **Rochester, NY 14608** | |
| City                State   Zip Code | City                State   Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| **Monroe County** | |
| County | Number       Street |
| | |
| | City                State   Zip Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **https://www.carestream.com/en/us/** |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☐ Other. Specify: _____ |

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**4461 (Health and Personal Care Stores)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, and it chooses to proceed under Subchapter V of Chapter 11. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☒ A plan is being filed with this petition.

    ☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.

| | District _____ | When _____ MM/DD/YYYY | Case number _____ |
| | District _____ | When _____ MM/DD/YYYY | Case number _____ |

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.   Debtor   **See Rider 1**                              Relationship   **Affiliate**

         District   **District of Delaware**

                                                              When   **08/23/2022**
         Case number, if known _____                       MM / DD / YYYY

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒   Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒   A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐   It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

    What is the hazard? _____

☐   It needs to be physically secured or protected from the weather.

☐   It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐   Other _____

**Where is the property?**   _____
                             Number        Street

                             _____
                             City                    State    Zip Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency   _____

         Contact name       _____

         Phone              _____

---

|   | **Statistical and administrative information** |
|---|---|

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☒ 1-49         ☐ 1,000-5,000        ☐ 25,001-50,000
☐ 50-99        ☐ 5,001-10,000       ☐ 50,001-100,000
☐ 100-199      ☐ 10,001-25,000      ☐ More than 100,000
☐ 200-999

| Debtor | **Carestream Health World Holdings, LLC** | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| **15. Estimated assets** | ☐ | $0-$50,000 | ☐ | $1,000,001-$10 million | ☐ | $500,000,001-$1 billion |
| | ☐ | $50,001-$100,000 | ☐ | $10,000,001-$50 million | ☒ | $1,000,000,001-$10 billion |
| | ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| | ☐ | $500,001-$1 million | ☐ | $100,000,001-$500 million | ☐ | More than $50 billion |

| | | | | | | |
|---|---|---|---|---|---|---|
| **16. Estimated liabilities** | ☐ | $0-$50,000 | ☐ | $1,000,001-$10 million | ☐ | $500,000,001-$1 billion |
| | ☐ | $50,001-$100,000 | ☐ | $10,000,001-$50 million | ☒ | $1,000,000,001-$10 billion |
| | ☐ | $100,001-$500,000 | ☐ | $50,000,001-$100 million | ☐ | $10,000,000,001-$50 billion |
| | ☐ | $500,001-$1 million | ☐ | $100,000,001-$500 million | ☐ | More than $50 billion |

| **Request for Relief, Declaration, and Signatures** |
|---|

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **08/23/2022**
MM/ DD / YYYY

**✗**   **/s/ Scott Rosa**                         **Scott Rosa**
Signature of authorized representative of debtor        Printed name

Title   **Chief Financial Officer**

**18. Signature of attorney**

**✗**   **/s/ Laura Davis Jones**          Date   **08/23/2022**
Signature of attorney for debtor                   MM/DD/YYYY

**Laura Davis Jones**
Printed name

**Pachulski Stang Ziehl & Jones LLP**
Firm name

**919 North Market Street, 17th Floor, P.O. Box 8705**
Number               Street

| | | | |
|---|---|---|---|
| **Wilmington** | | **Delaware** | **19801** |
| City | | State | ZIP Code |
| **(302) 652-4100** | | **ljones@pszjlaw.com** | |
| Contact phone | | Email address | |
| **2436** | | **Delaware** | |
| Bar number | | State | |

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**District of Delaware**

(State)

Case number *(if known)*: _____    Chapter ___11___

☐ Check if this is an
amended filing

### Rider 1
### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of Delaware for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Carestream Health, Inc.

- **Carestream Health, Inc.**
- **Carestream Health Acquisition, LLC**
- **Carestream Health Canada Holdings, Inc.**
- **Carestream Health Holdings, Inc.**
- **Carestream Health International Holdings, Inc.**
- **Carestream Health International Management Company, Inc.**
- **Carestream Health Puerto Rico, LLC**
- **Carestream Health World Holdings, LLC**
- **Lumisys Holding Co.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CARESTREAM HEALTH WORLD HOLDINGS, LLC, | Case No. 22-_____(___) |
| Debtor. | |

## LIST OF EQUITY SECURITY HOLDERS[1]

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Carestream Health, Inc. | 150 Verona Street Rochester, New York 14608 | 100% |

---

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARESTREAM HEALTH WORLD HOLDINGS, LLC, | ) | Case No. 22-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CORPORATE OWNERSHIP STATEMENT

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| Carestream Health, Inc. | 100% |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARESTREAM HEALTH WORLD | ) | Case No. 22-_____(___) |
| HOLDINGS, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

## CERTIFICATION OF CREDITOR MATRIX

      Pursuant to Rule 1007-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware, the above-captioned debtor and its affiliated debtors in possession (collectively, the "Debtors")[1] hereby certify that the creditor matrix submitted herewith (the "Creditor Matrix") contains the names and addresses of the Debtors' creditors. To the best of the Debtors' knowledge, the Creditor Matrix is complete, correct, and consistent with Debtors' books and records.

      The information contained herein is based upon a review of the Debtors' books and records as of the petition date. However, no comprehensive legal and/or factual investigations with regard to possible defenses to any claims set forth in the Creditor Matrix have been completed. Therefore, the listing does not, and should not be deemed to, constitute: (1) a waiver of any defense to any listed claims; (2) an acknowledgement of the allowability of any listed claims; and/or (3) a waiver of any other right or legal position of the Debtors.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232). The location of the Debtors' service address is: 150 Verona Street, Rochester, New York 14608.

**Fill in this information to identify the case:**

Debtor name: **Carestream Health, Inc., et al.[1]**

United States Bankruptcy Court for the **District of Delaware**
(State)

Case number (*If known*): _____

☐  Check if this is an
amended filing

## Official Form 204

# Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case.  Include claims which the debtor disputes.
Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors,
unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 AURIGA POLYMER INC 4235 S STREAM BLVD., STE 450 CHARLOTTE, NC 28217 USA | Thomas Brekovsky 980-233-8226 tom.brekovsky@us.indorama.net | Trade Vendor | | | | $2,695,600 |
| 2 INNOCARE OPTOELECTONICS USA INC. 101 METRO DR, SUITE 510 SAN JOSE, CA 95110 USA | Eric Raymond 408-573-8438 eric.p.raymond@innocare-x.com | Trade Vendor | | | | $2,025,715 |
| 3 SKC INC. 1000 SKC DRIVE COVINGTON, GA 30014 USA | Daryl Jones 770-235-5234 djones@skcfilms.com | Trade Vendor | | | | $1,846,660 |
| 4 SAP AMERICA INC. 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 USA | Jim Soboleski 859-406-2873 jim.soboleski@sap.com | Trade Vendor | | | | $1,742,395 |
| 5 EASTMAN KODAK COMPANY INC 1669 LAKE AVENUE ROCHESTER, NY 14615 USA | John Brennan 585-477-3747 john.m.brennan@kodak.com | Trade Vendor | | | | $1,056,719 |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Carestream Health, Inc. (0334); Carestream Health Acquisition, LLC (0333); Carestream Health Canada Holdings, Inc. (7700); Carestream Health Holdings, Inc. (7822); Carestream Health International Holdings, Inc. (5771); Carestream Health International Management Company, Inc. (0532); Carestream Health Puerto Rico, LLC (8359); Carestream Health World Holdings, LLC (1662); and Lumisys Holding Co. (3232).  The location of the Debtors' service address is:  150 Verona Street, Rochester, New York 14608.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6 | TRIMEDX HOLDINGS, LLC 5451 LAKEVIEW PARKWAY S DRIVE INDIANAPOLIS, IN 46268 USA | AP – ap@trimedx.com Kellie Barber – kellie.barber@trimedx.com (Parts and Service calls) Gloria Brown – gloria.brown@trimedx.com (Service Agreements) David Blomeke Senior Operations Strategy Specialist David.Blomeke@trimedx.com 317-957-5169 | Customer Prepaids | Subject to Offset | | | $933,230 |
| 7 | AMELIA US LLC 17 STATE ST, 14TH FL, NEW YORK, NY 10005 USA | Robert Maze 212-798-5691 robert.maze@ipsoft.com | Trade Vendor | | | | $920,059 |
| 8 | UNIVAR SOLUTIONS USA INC. 3075 HIGHLANDS PKWAYS, STE 200 DOWNERS GROVE, IL 60515 USA | Matt Stephens 832-795-3760 matt.stephens@univarsolutions.com | Trade Vendor | | | | $901,097 |
| 9 | SCHOELLER TECHNOCELL GMBH & CO. KG BURG GRETESCH, OSNABRüCK, 03 DE | Mark Ward 315-298-8428 msward@felix-schoeller.com | Trade Vendor | | | | $844,656 |
| 10 | RIVERSIDE ELECTRONICS LTD ONE RIVERSIDE DR. LEWISTON, MN 55952 USA | Anita Werner 507-523-5517 awerner@riversideintegrated.com | Trade Vendor | | | | $815,376 |
| 11 | LARSEN & TOUBRO INFOTECH LIMITED 2035 LINCOLN HIGHWAY STE. 3000 EDISON, NJ 08817 USA | Ojas.Lokhande 732-248-6151 Ojas.Lokhande@lntinfotech.com | Trade Vendor | | | | $780,853 |
| 12 | MCI COMMUNICATIONS SERVICES INC. 22001 LOUDOUN COUNTY PKWY ASHBURN, VA 20147 | Chad Hutchings 303-305-1534 Chad.hutchings@verizon.com | Trade Vendor | | | | $751,204 |
| 13 | ROUSSELOT INC. SUITE 2210 6737 W WASHINGTON STREET WEST ALLIS, WI 53214 USA | Michael Schmit 262-363-6064 mike.schmit@rousselot.com | Trade Vendor | | | | $646,589 |
| 14 | MERCURY AIRCRAFT INC. PO BOX 338 8126 COUNTY ROUTE 88, HAMMONDSPORT, NY 14840 | Peter Hannan 607-569-4213 pete_hannan@mercurycorp.net | Trade Vendor | | | | $601,619 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| | USA | | | | | | |
| 15 | BARENTZ NORTH AMERICA INTERMEDIATE 1390 JAYCOX RD. AVON, OH 44011 USA | Mark Maroon 440-937-1000 mark@barentz.us | Trade Vendor | | | | $600,386 |
| 16 | NISSAN CHEMICAL AMER CORP 10375 RICHMOND AVE., STE. 1000 HOUSTON, TX 77042 USA | William Smith 713-532-4745 will.smith@nissanchem-usa.com | Trade Vendor | | | | $599,400 |
| 17 | EASTMAN CHEMICAL COMPANY 100 N EASTMAN ROAD, KINGSPORT, TN 37660 USA | Paul Anderson 423-229-4981 panderson@eastman.com | Trade Vendor | | | | $564,291 |
| 18 | ELEMENT FLEET CORPORATION 940 RIDGEBROOK RD, SPARKS GLENCOE, MD US | Dale-Ann Gilbert 514-612-6812 dgilbert@elementcorp.com | Trade Vendor | | | | $525,104 |
| 19 | POUDRE VALLEY REA PO BOX 272550 FORT COLLINS, CO 80527-2550 USA | Amy Rosier 970-282-6445 arosier@pvrea.coop | Trade Vendor | | | | $510,768 |
| 20 | ORIENT INTL HOLDING SHANGHAI 85 LOU SHAN GUAN RD SUITE B, SHANGHAI 200336 CHINA | Mr. Yan Zheng 021-37285158 yanzheng1@vip.sina.com | Trade Vendor | | | | $496,139 |
| 21 | VAREX IMAGING CORPORATION 1678 S. PIONEER ROAD SALT LAKE CITY, UT 84104 USA | David Carmona 440-543-1882 david.carmona@vareximaging.com | Trade Vendor | | | | $485,509 |
| 22 | IRAY KOREA LIMITED 1833,18F,5,GASAN DIGITAL1-RO,GEUMCH, SEOUL, 01 KR | Betty Li  Bin.li@iraygroup.com | Trade Vendor | | | | $475,325 |
| 23 | ALLIANCE CONTRACT MANUFACTURING SDN 2006JALAN JELAWAT,, PENANG, MY MY | Mr. GH Tan (6)04-399-2922 gh.tan@acm-holdings.com | Trade Vendor | | | | $412,548 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 24 | GS YUASA ENERGY SOLUTIONS, INC. 1150 NORTHMEADOW PKWY ROSWELL, GA 30076 USA | Jim Morath 262-490-7457 jim.morath@gsyuasa-es.com | Trade Vendor | | | | $395,224 |
| 25 | MILLER & ASSOCIATES SOURCING P.O. BOX 244 2280 EAST AVENUE ROCHESTER, NY 14610 USA | James Miller 585-472-1948 james@millerandassociates.com | Trade Vendor | | | | $391,201 |
| 26 | INVENTUS POWER (ILLINOIS) LLC 1200 INTERNATIONALE PKWY WOODRIDGE, IL 60517 US | Miguel Conde 717-309-0046 mconde@inventuspower.com | Trade Vendor | | | | $371,277 |
| 27 | BJ GEAR A/S NIELS BOHRS VEJ 47, SKANDERBORG, DK | Gert Christensen 45 87 40 80 80 gc@bj-gear.dk | Trade Vendor | | | | $360,184 |
| 28 | BRENNTAG NORTH AMERICA, INC. 1000 COOLIDGE ST., SOUTH PLAINFIELD, NJ 07080 USA | Anita Kuo 972-795-1160 akuo@brenntag.com | Trade Vendor | | | | $359,050 |
| 29 | ENMARQ TECHNOLOGIES LIMITED 71-75, SHELTON STREET, LONDON, LO GB | Kiran Alluri 44 01182954274 kiran.a@enmarq.com | Trade Vendor | | | | $337,325 |
| 30 | HENAN HARVEST CHEM CO., LTD 24THFL NO.1 BUILDING, ZHENGZHOU, 180 CN | Mr. George Zhang 86 13939 0299 33 george@hnharvest.com | Trade Vendor | | | | $326,610 |
| | | | | | | | |



## OMNIBUS WRITTEN CONSENT OF
## THE BOARD OF DIRECTORS OR SOLE MEMBER

### Dated as of August 22, 2022

After due deliberation, the undersigned, being all of the members of the board of directors or sole member, as applicable (collectively, the "Board"), of each of the companies listed on Schedules 1 through 9 attached hereto (each, a "Company" and collectively, the "Companies"), hereby take the following actions and adopt the following resolutions (the "Resolutions") by written consent as of the date first written above, pursuant to the bylaws, limited partnership agreements, or the limited liability company agreements of each Company, as applicable, and the applicable laws of the jurisdiction in which such Company is organized:

### RESOLUTIONS

**Chapter 11 Filing**

**WHEREAS**, the Board has reviewed and considered the following:

    (1)    the presentations by the Companies' management and the legal and financial advisors of the Companies regarding the liabilities and liquidity of the Companies, the strategic alternatives available to them, and the impact of the foregoing on each Company's businesses;

    (2)    the restructuring support agreement, the form of which the Board had previously reviewed and approved (the "Restructuring Support Agreement," and the transactions contemplated thereby, collectively, the "Restructuring Transactions");

    (3)    the information and advice previously provided to and reviewed by the Board; and

    (4)    the related matters reported on at meetings of the Board on and before the date hereof; and

**WHEREAS**, the Restructuring Support Agreement provides that the Restructuring Transactions are to be implemented through the Companies' filing of voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and pursuing confirmation and consummation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Carestream Health, Inc. and Its Debtor Affiliates* (as amended, supplemented, or modified from time to time, and including all supplements and exhibits thereto, the "Plan");

**WHEREAS**, the Board has had the opportunity to consult with the Companies' management and the legal and financial advisors of the Companies and to fully consider each of the strategic alternatives available to the Companies; and

**WHEREAS**, the Board has determined, in its business judgment, that it is desirable and in the best interests of each Company and its respective stakeholders for the Companies to implement the Restructuring Transactions by (1) filing, or causing the filing of, voluntary petitions under chapter 11 of the Bankruptcy Code and consummating the Plan; and (2) filing, or causing the filing of, any other petition for relief or recognition or other order that may be desirable under applicable law in the United States; and that such implementation will maximize the value of each Company.

**NOW, THEREFORE, BE IT**

**RESOLVED**, that in the business judgment of the Board, it is desirable and in the best interests of each Company and its respective stakeholders for each Company to implement the Restructuring Transactions by (1) filing, or causing the filing of, a voluntary case under chapter 11 of the Bankruptcy Code (a "Chapter 11 Case") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and consummating the Plan; and (2) filing, or causing the filing of, any other petition for relief or recognition or other order that may be desirable under applicable law in the United States;

**RESOLVED**, that each of the following is hereby authorized and approved in all respects: (1) each Company's filing, or causing to be filed, a Chapter 11 Case under the Bankruptcy Code in the Bankruptcy Court; (2) each Company's pursuing confirmation and consummation of the Plan and completing the same; and (3) each Company's filing, or causing to be filed, any other petition for relief or recognition or other order that may be desirable under applicable law in the United States; and

**RESOLVED**, that the Chief Executive Officer, the Chief Financial Officer, any Vice President, or any other duly appointed officer of the Companies as deemed necessary and appropriate (collectively, the "Authorized Signatories"), with power of delegation, is hereby authorized to execute and file on behalf of each Company all petitions, schedules, lists and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of each Company's business.

**Retention of Professionals**

**RESOLVED**, that each Authorized Signatory be, and hereby is, authorized and directed to employ the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP (together, "Kirkland") as general bankruptcy counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or other papers; and in connection therewith, each Authorized Signatory, with power of delegation, is hereby authorized and directed to execute appropriate retention

agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Kirkland;

**RESOLVED**, that each Authorized Signatory be, and hereby is, authorized and directed to employ the law firm of Pachulski Stang Ziehl & Jones LLP ("Pachulski") as local bankruptcy counsel to represent and assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or other papers; and in connection therewith, each Authorized Signatory, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Pachulski;

**RESOLVED**, that each Authorized Signatory be, and hereby is, authorized and directed to employ the firm AlixPartners, LLC ("AlixPartners") as restructuring advisor to assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or other papers; and in connection therewith, each Authorized Signatory, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of AlixPartners;

**RESOLVED**, that each Authorized Signatory be, and hereby is, authorized and directed to employ the firm Houlihan Lokey, Inc. ("Houlihan") as financial advisor and investment banker to assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or other papers; and in connection therewith, each Authorized Signatory, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Houlihan;

**RESOLVED**, that each Authorized Signatory be, and hereby is, authorized and directed to employ the firm of Kurtzman Carson Consultants LLC ("KCC") as claims and noticing agent to assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or other papers; and in connection therewith, each Authorized Signatory, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of KCC;

**RESOLVED**, that each Authorized Signatory be, and hereby is, authorized and directed to employ any other professionals to assist each Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance each Company's rights and obligations, including filing any motions, objections, replies, applications, or other papers; and in connection therewith, each Authorized Signatory, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary; and

**RESOLVED**, that each Authorized Signatory be, and hereby is, with power of delegation, authorized, empowered and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, and other professionals and to take and perform any and all further acts and deeds that such Authorized Signatory deems necessary, proper, or desirable in connection with each Company's Chapter 11 Case, with a view to the successful prosecution of such case.

**Debtor-in-Possession Financing, Cash Collateral, and Adequate Protection**

**WHEREAS**, reference is made to that certain Amended and Restated Credit Agreement (First Lien), by and among Carestream Health, Inc., as company, Carestream Health Holdings, Inc., as holdings, the guarantors thereunder, the lenders from time to time party thereto, and the administrative agent thereunder, dated as of June 7, 2013, as amended and restated, supplemented, or otherwise modified from time to time (the "First Lien Credit Agreement");

**WHEREAS**, reference is made to that certain Second Lien Credit Agreement, by and among Carestream Health, Inc., as company, Carestream Health Holdings, Inc., as holdings, the guarantors thereunder, the lenders from time to time party thereto, and the administrative agent thereunder, dated as of June 7, 2013, as amended and restated, supplemented, or otherwise modified from time to time (the "Second Lien Credit Agreement" and together with the First Lien Credit Agreement, the "Prepetition Financing Documents");

**WHEREAS**, the Company has negotiated (i) the terms of that certain Senior Secured Superpriority Debtor-in-Possession Credit Facility Commitment Letter, to be dated on or around the date hereof, among Carestream Health Holdings, Inc., as a guarantor thereunder, ("Holdings"), Carestream Health, Inc., as the borrower (the "Borrower") and the other Companies (other than Carestream Health Puerto Rico, Inc.), as guarantors thereunder (together with Holdings and the Borrower, the "DIP Loan Parties") and the commitment parties party thereto (the "DIP Commitment Letter"), which contemplates the entry of the DIP Loan Parties into a multiple-draw superpriority senior secured debtor in possession term loan facility (the "DIP Facility") consistent with the terms and conditions set forth in the term sheet attached to the Commitment Letter as Exhibit A thereto (the "DIP Term Sheet", the lenders described therein, the "DIP Lenders" and the administrative agent and collateral agent under the DIP Facility, the "DIP Agent"), the form of which (or substantially the form) has been provided to each Board, (ii) the terms of that certain DIP Administrative Agent Fee Letter, to be dated on or around the date hereof, among Holdings and the DIP Agent (the "DIP Agency Fee Letter") providing for the payment of the DIP Agent's fees for servicing the DIP Facility and (iii) arrangements for postpetition financing and use of cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral"); and

**WHEREAS**, the DIP Loan Parties have further negotiated and agreed in the DIP Commitment Letter that upon the request of Required DIP Lenders (as defined in the DIP Commitment Letter and pursuant to the terms thereof) they shall also enter into (i) a senior secured superpriority debtor in possession credit agreement on the terms set forth in the DIP Term Sheet (the "DIP Credit Agreement"), (ii) one or more guaranty and security agreements evidencing the guaranties of the DIP obligations by the Company guarantors thereunder and the

liens on certain of the assets of the DIP Loan Parties securing the DIP obligations and (iii) any other definitive documentation requested by Required DIP Lenders (such documents described in clauses (ii) and (iii) hereof, together with the DIP Commitment Letter, the DIP Agency Fee Letter and the DIP Credit Agreement, if any, the "DIP Documents" and the transactions contemplated thereby the "DIP Transactions").

**NOW, THEREFORE, BE IT,**

**RESOLVED**, that in the business judgment of the Board, each Company will benefit from using collateral, including Cash Collateral, that is security for the holders of Company obligations under the Prepetition Financing Documents (the "Prepetition Secured Parties");

**RESOLVED**, that the execution, delivery and performance of the DIP Documents and/or the Additional DIP Documents (as defined below) to which any or all of the Companies are a party and the consummation of the transactions contemplated thereby be, and they hereby are, declared advisable and fair to, and in the best interest of, each such Company and, in the business judgment of each Board, each such Company will benefit from entering into and performing under the DIP Documents and/or the Additional DIP Documents;

**RESOLVED**, that for each Company to use and benefit from using the Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, each Company will provide certain liens, claims, and other entitlements to the Prepetition Secured Parties (collectively, the "Adequate Protection Obligations"), as documented in a proposed interim order and a proposed final order (collectively, the "DIP Orders") to be submitted to the Bankruptcy Court for approval;

**RESOLVED**, that the form, terms, and provisions of the DIP Term Sheet, the DIP Agency Fee Letter, the DIP Documents, and any documents and agreements related thereto or contemplated thereunder, and the DIP Orders to which each Company shall be subject, and the actions and transactions contemplated thereby, including (i) the borrowing of funds pursuant to the terms of the DIP Commitment Letter and the DIP Orders by the DIP Loan Parties and the provision of the guarantees and security with respect thereto by the DIP Loan Parties and (ii) the negotiation, execution, delivery and performance of the DIP Documents, and all other agreements, instruments, documents, notices and certificates constituting exhibits to or that may be required, necessary, appropriate, desirable or advisable to be executed and delivered pursuant to the DIP Documents or otherwise permitted thereunder or related thereto (each an "Additional DIP Document" and, collectively, the "Additional DIP Documents") (including, for the avoidance of doubt, the approval of the format and terms of, and executing and delivering, any such schedules, confirmations and other documents in connection with the DIP Documents and the Additional DIP Documents that are requested by the DIP Agent) and the making of representations and compliance with the covenants thereunder and the assumption of any obligations under and in respect of any of the foregoing, in each case, are hereby authorized and approved are authorized and approved in all respects; and each Authorized Signatory is authorized and empowered, in the name of and on behalf of each Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the DIP Documents and the Companies' respective obligations thereunder

(collectively, the "<u>DIP Obligations</u>"), and to perform under the DIP Orders and cause the Companies' performance of their respective obligations thereunder;

      **RESOLVED**, that each Company, as a debtor and debtor in possession under the Bankruptcy Code be, and hereby is, authorized to incur the Adequate Protection Obligations and the DIP Obligations, including granting liens on its assets to secure claims that constitute Adequate Protection Obligations and the DIP Obligations;

      **RESOLVED**, that the Authorized Officers, acting alone or with one or more other Authorized Officers be, and each of them hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company, as a debtors and debtor in possession, to take such actions as in their discretion is determined to be necessary, desirable, appropriate, or proper to consummate and implement the DIP Transactions, including, without limitation, (i) the execution and delivery of the DIP Documents and each Additional DIP Document, with such changes therein and additions thereto as any such Authorized Officer, in his or her sole discretion, may deem necessary, convenient, appropriate, desirable or advisable; (ii) the preparation, negotiation, execution, delivery and filing of any agreements, certificates or other instruments or documents (including mortgages, security agreements, pledge agreements, financing statements and similar documents related to the DIP Documents or the DIP Transactions), (iii) the modification or amendment (whether prior to or subsequent to the date hereof) of any of the terms and conditions of the DIP Documents and/or any Additional DIP Documents, (iv) the payment of any consideration, (v) the payment of indemnities, fees, costs, expenses and taxes as any such Authorized Officer, in his or her sole discretion, may deem necessary, appropriate or advisable (such acts to be conclusive evidence that such Authorized Officer deemed the same to meet such standard) in order to effect the DIP Transactions, (vi) the creation and/or management of any other demand deposit or operating account relationships or other cash management services; and (vii) and all acts of any such Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified and confirmed in all respects;

      **RESOLVED**, that the Authorized Officers, acting alone or with one or more other Authorized Officers be, and each of them hereby is, authorized, directed, and empowered in the name of, and on behalf of, the Companies, as debtors and debtors in possession, to file or to authorize the DIP Agent to file any Uniform Commercial Code (the "<u>UCC</u>") financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Companies that the DIP Agent deems necessary or appropriate to perfect any lien or security interest granted under the DIP Orders, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Companies and such other filings in respect of intellectual and other property of the Companies, in each case as the DIP Agent may reasonably request to perfect the security interests of the DIP Agent under the DIP Orders;

**RESOLVED**, that the Authorized Officers, acting alone or with one or more other Authorized Officers be, and each of them hereby is, authorized, directed, and empowered in the name of, and on behalf of, the Companies, as debtors and debtors in possession, to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the DIP Facility and all fees and expenses incurred by or on behalf of the Companies in connection with the foregoing resolutions, in accordance with the terms of the DIP Documents, which shall in their sole judgment be necessary, proper, or advisable to perform any of the Companies' obligations under or in connection with the DIP Orders or any of the other DIP Documents and the transactions contemplated therein and to fully carry out the intent of the foregoing resolutions;

**RESOLVED**, that each Authorized Officer of each Company, any one of whom may take action without the joinder of any of the others, is hereby authorized, in the name and on behalf of such Company, respectively, to (a) prepare any amendments, waivers, consents, supplements, or other modifications under the DIP Documents and/or each Additional DIP Document to which such Company is a party as may be necessary, convenient, advisable, desirable or appropriate at any time from time to time, which amendments, waivers, consents or supplements may provide for modifications or relief under such agreements or documents and may require consent payments, fees or other amounts payable in connection therewith, and (b) execute and deliver such amendments, waivers, consents, supplements, or other modifications under such agreements or documents as such Authorized Officer shall deem to be necessary, convenient, advisable, desirable or appropriate, such execution and delivery by such Authorized Officer to be conclusive evidence of his or her determination and approval of the necessity, appropriateness or advisability thereof; and

**RESOLVED**, that (a) the signature of any Authorized Officer of any Company to each DIP Document, and each Additional DIP Document and any amendments, waivers, consents, supplements, or other modifications to which the respective Company is a party shall be conclusive evidence of the authority of such Authorized Officer to execute and deliver such documents and (b) any person dealing with any Authorized Officer of each Company in connection with any of the foregoing matters shall be conclusively entitled to rely upon the authority of such Authorized Officer and by his or her execution of any document or agreement, the same shall be valid and binding obligations of such Company enforceable in accordance with its terms.

**General**

**RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Signatories, each of the Authorized Signatories (and their designees and delegates), any one of whom may act without the joinder of any of the others, are hereby individually authorized and empowered, in the name of and on behalf of the Companies, to take or cause to be taken any and all such other and further action including, but not limited to, (i) the seeking, preparation and negotiation of such additional agreements, amendments, supplements, modifications, consents, waivers, reports, documents, instruments, applications, notes or certificates not now known but which may be required, (ii) the seeking, preparation and negotiation of such changes and additions to any agreements, amendments, supplements, other

modifications, consents, waivers, reports, documents, instruments, applications, notes or certificates currently existing, (iii) the execution, acknowledgement, delivery, performance and filing (if applicable) of any of the foregoing and (iv) the payment of all fees, consent payments, taxes, indemnities and other expenses, in each case as in such officer's judgment, shall be necessary, advisable, convenient or desirable in order to fully carry out the intent and accomplish the purposes of the Resolutions adopted herein, all of such actions, executions, deliveries, filings and payments to be conclusive evidence of such approval or that such Authorized Signatory deemed the same to be so necessary, convenient, appropriate, desirable or advisable; and that all such actions, executions, deliveries, filings and payments taken or made at any time in connection with the transactions contemplated by the foregoing resolutions hereby are approved, adopted, ratified and confirmed in all respects as the acts and deeds of such Company, respectively, as if specifically set out in these resolutions;

RESOLVED, that, to the extent that any Company serves as (i) the sole member or manager, (ii) the managing member, (iii) the general partner or (iv) otherwise as the governing body (the "Controlling Party"), in each case, of any subsidiary of such Company (the "Controlled Party"), each Authorized Officer of the Controlling Party, any one of whom may act without the joinder of any of the others, is hereby authorized in the name and on behalf of each Controlling Party (acting for such Controlled Company in the capacity set forth above, as applicable), to take all of the actions on behalf of such Controlled Party that an Authorized Officer is herein authorized to take on behalf of such Controlling Party;

RESOLVED, that each Board hereby adopts and incorporates by reference any form of specific resolution to carry into effect the intent and purpose of the foregoing resolutions, or to cover authority included in matters authorized in the foregoing resolutions, including forms of resolutions in connection therewith that may be required by any state, other jurisdiction or other institution, person or agency, and a copy of these Resolutions shall be filed with the records of the meetings of the Board and certified as duly adopted thereby;

RESOLVED, that the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing Resolutions, as may be required by the organizational documents of each Company, or hereby waive any right to have received such notice;

RESOLVED, that all acts, actions and transactions relating to the matters contemplated by the foregoing Resolutions done in the name of and on behalf of each Company, which acts would have been approved by the foregoing Resolutions except that such acts were taken before the adoption of these Resolutions, are hereby in all respects approved and ratified as the true acts and deeds of each Company with the same force and effect as if each such act, transaction, agreement or certificate has been specifically authorized in advance by the Resolutions of the Board; and

RESOLVED, that (a) the foregoing Resolutions may be executed and delivered electronically (including by facsimile or portable document format (pdf) transmission), (b) these Resolutions may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument and (c) facsimile and

other electronic copies of manually-signed originals shall have the same effect as manually-signed originals and shall be binding on each Board and each Company.

\* \* \*

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

Board of Directors of the Company listed on **Schedule 1**

By:  **/s/ Robert V. Baumgartner**
    Name:  Robert V. Baumgartner

By:  **/s/ Joseph F. Dooley**
    Name:  Joseph F. Dooley

By:  **/s/ William A. Sanger**
    Name:  William A. Sanger

By:  **/s/ Eliot L. Siegel, M.D.**
    Name:  Eliot L. Siegel, M.D.

By:  **/s/ Michael L. Smith**
    Name:  Michael L. Smith

By:  **/s/ David C. Westgate**
    Name:  David C. Westgate

By:  **/s/ Patrick J. Bartels, Jr.**
    Name:  Patrick J. Bartels, Jr.

By:  **/s/ Adam Cobourn**
    Name:  Adam Cobourn

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

Board of Directors of the Company listed on **Schedule 2**

By: _/s/ Robert V. Baumgartner_
      Name: Robert V. Baumgartner

By: _/s/ Joseph F. Dooley_
      Name: Joseph F. Dooley

By: _/s/ William A. Sanger_
      Name: William A. Sanger

By: _/s/ Eliot L. Siegel, M.D._
      Name: Eliot L. Siegel, M.D.

By: _/s/ Michael L. Smith_
      Name: Michael L. Smith

By: _/s/ David C. Westgate_
      Name: David C. Westgate

By: _/s/ Patrick J. Bartels, Jr._
      Name: Patrick J. Bartels, Jr.

By: _/s/ Adam Cobourn_
      Name: Adam Cobourn

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

Board of Directors of the Company listed on **Schedule 3**

By: ___/s/ Alisa B. Hoy_____

    Name:  Alisa B. Hoy

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

Board of Directors of the Company listed on **<u>Schedule 4</u>**

By: _ /s/ Alisa B. Hoy _____
    Name: Alisa B. Hoy

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

Board of Directors of the Company listed on **<u>Schedule 5</u>**


By: <u>  */s/ Alisa B. Hoy*                            </u>
     Name:  Alisa B. Hoy

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

CARESTREAM HEALTH, INC., being the Sole Member of the Company listed on **<u>Schedule 6</u>**


By: _/s/ Alisa B. Hoy_____
       Name:  Alisa B. Hoy
       Title:   Secretary

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

Board of Directors of the Company listed on **<u>Schedule 7</u>**

By:  __/s/ Alisa B. Hoy_____
     Name:  Alisa B. Hoy

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

Board of Directors of the Company listed on **<u>Schedule 8</u>**

By:   /s/ Alisa B. Hoy
     Name:  Alisa B. Hoy

**IN WITNESS WHEREOF**, the undersigned have executed this consent as of the date first written above.

CARESTREAM HEALTH, INC., being the Sole Member of the Company listed on **<u>Schedule 9</u>**

By:  */s/ Scott H. Rosa*
     Name:  Scott H. Rosa
     Title:  Vice President and
           Chief Financial Officer

## Schedule 1
**Board of Directors:  Robert V. Baumgartner, Joseph F. Dooley, William A. Sanger, Eliot L. Siegel, M.D., Michael L. Smith, David C. Westgate, Patrick J. Bartels, Jr., Adam Cobourn**

| Company | Jurisdiction |
|---|---|
| Carestream Health Holdings, Inc. | Delaware |

## Schedule 2
**Board of Directors:  Robert V. Baumgartner, Joseph F. Dooley, William A. Sanger, Eliot L. Siegel, M.D., Michael L. Smith, David C. Westgate, Patrick J. Bartels, Jr., Adam Cobourn**

| Company | Jurisdiction |
|---|---|
| Carestream Health, Inc. | Delaware |

## Schedule 3
**Board of Directors:  Alisa B. Hoy**

| Company | Jurisdiction |
|---|---|
| Carestream Health World Holdings LLC | Delaware |

## Schedule 4
**Board of Directors:  Alisa B. Hoy**

| Company | Jurisdiction |
|---|---|
| Carestream Health Canada Holdings, Inc. | Delaware |

## Schedule 5
**Board of Directors:  Alisa B. Hoy**

| Company | Jurisdiction |
|---|---|
| Carestream Health International Management Company, Inc. | Delaware |

## Schedule 6

**Sole Member:  Carestream Health, Inc.**

| Company | Jurisdiction |
|---|---|
| Carestream Health Acquisition, LLC | Delaware |

## Schedule 7

**Board of Directors:  Alisa B. Hoy**

| Company | Jurisdiction |
|---|---|
| Lumisys Holding Co. | Delaware |

## Schedule 8

**Board of Directors:  Alisa B. Hoy**

| Company | Jurisdiction |
|---|---|
| Carestream Health International Holdings, Inc. | Delaware |

## Schedule 9

**Sole Member:  Carestream Health, Inc.**

| Company | Jurisdiction |
|---|---|
| Carestream Health Puerto Rico, LLC | Puerto Rico |

Fill in this information to identify the case and this filing:

Debtor Name     **Carestream Health World Holdings, LLC**

United States Bankruptcy Court for the:     **District of Delaware**

(State)

Case number (If known):

# Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors     12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐  *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐  *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐  *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐  *Schedule H: Codebtors (Official Form 206H)*

☐  *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐  Amended Schedule

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒  Other document that requires a declaration **List of Equity Security Holders, Corporate Ownership Statement, and Certification of Creditor Matrix**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on     08/23/2022          ☒ */s/ Scott Rosa*
                MM/ DD/YYYY         Signature of individual signing on behalf of debtor

                                    **Scott Rosa**
                                    Printed name

                                    **Chief Financial Officer**
                                    Position or relationship to debtor

**Official Form 202**          **Declaration Under Penalty of Perjury for Non-Individual Debtors**